UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JARVIS KEITH POTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CV 1896 JMB |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER[2]

Plaintiff Jarvis Keith Potter ("Plaintiff") appeals the decision of the Acting Commissioner of Social Security ("Defendant") denying his applications for disability benefits under Title II of the Social Security Act, see 42 U.S.C. §§ 401 et seq., and supplemental security income under Title XVI, see 42 U.S.C. §§ 1381 et seq. Substantial evidence supports the Commissioner's decision, and therefore it is affirmed. See 42 U.S.C. § 405(g).

## I.  Background

### A. Procedural History

On May 6, 2013, Plaintiff filed applications for disability benefits, arguing that his disability began on April 21, 2013, as a result of injuries sustained in a car accident, including bleeding of the brain, punctured lungs, and left ear deafness. (Tr. 98-99, 154-60) On October 22, 2013, Plaintiff's claims were denied upon initial consideration. (Tr. 98-99, 106-07) Plaintiff

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] This case is before the undersigned for judicial review pursuant to 42 U.S.C. § 405(g), with the consent of the parties under 28 U.S.C. § 636(c).

then requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at the hearing (with counsel) on May 23, 2014, and testified concerning the nature of his disability, his functional limitations, and his past work. (Tr. 41-46, 48-58) A vocational expert ("VE") also testified. (Tr. 59-68) The VE testified about the nature of Plaintiff's past work, and opined as to Plaintiff's ability to secure other work in the national economy, based upon his functional limitations, age, and education. (Id.) After taking the testimony of Plaintiff and the VE, and after reviewing the rest of the evidence of record, the ALJ issued a decision on June 27, 2014, finding that Plaintiff was not disabled, and therefore denying Plaintiff's benefits.

Plaintiff then sought review of the ALJ's decision before the Appeals Council of the Social Security Administration. (Tr. 1-5) On October 21, 2015, the Appeals Council denied review of Plaintiff's claims, (Tr. 1-3), therefore making the June 2014 decision of the ALJ the final decision of the Commissioner. Plaintiff has therefore exhausted his administrative remedies, and his appeal is properly before this Court. See 42 U.S.C. § 405(g).

In his brief to this Court, Plaintiff raises two issues: the ALJ committed reversible error by failing to give any weight to Plaintiff's low GAF scores inasmuch these scores establish his mental functional limitations, and by failing to account for Plaintiff's serious psychological impairments in his RFC determination. The Commissioner filed a detailed brief in opposition contending that the ALJ's decision is based upon substantial evidence.

As explained below, the Court has considered the entire record in this matter. Because the decision of the Commissioner is supported by substantial evidence, it will be affirmed.

**B. Administrative Hearing Testimony**

The ALJ conducted a hearing on May 23, 2014. (Tr. 26) At the hearing, both Plaintiff and a vocational expert ("VE") testified. Both witnesses were questioned by the ALJ and by

Plaintiff's attorney. Plaintiff testified generally as to his impairments, activities of daily living, functional abilities, and prior work history. The VE testified regarding Plaintiff's vocational abilities, and the existence of jobs appropriate to Plaintiff's RFC, educational, and work history.

### 1) **Plaintiff's Testimony** (Tr. 39-59)

Plaintiff testified that his April 19, 2013, car accident resulted in injuries to his brain, lungs, and back. (Tr. 41) Although his driver's license was revoked after the accident, Plaintiff indicated that he has a current Missouri driver's license without any restrictions. (Tr. 43-44)

Plaintiff is a college graduate with a degree in general studies. Plaintiff described his past work as a loan processor for one year, grossing $2,000. (Tr. 45)

As to his symptoms and medical treatment, Plaintiff testified that he has less than full hearing in his left ear. (Tr. 48) Plaintiff takes medications daily for his depression and anxiety. (Tr. 55) Plaintiff also claims that he experiences headaches every other day and lying down helps alleviate the pain. (Tr. 57-58) Plaintiff admitted that he no longer takes headache medication because he ran out of the medication. Plaintiff testified that he is treated by a psychiatrist once a month. (Tr. 58)

As to his physical limitations, Plaintiff stated that he cannot sit in the same position for more than twenty minutes without changing positions; that he experiences lower back and leg pain when he sits; that he can stand for the thirty minutes; that he can walk a half a mile without pain; and that he can crouch down, bend at the hip, bend at the knees, and reach in all directions. (Tr. 51)

### 2) **Vocational Expert Testimony** (Tr. 61-75)

After Plaintiff testified, a vocational expert ("VE") testified concerning Plaintiff's past work, and Plaintiff's current ability to work. First, the VE found that Plaintiff would not be able to perform his past relevant work as a bank loan processor. (Tr. 60-61)

Next, the ALJ asked the VE a series of hypothetical questions, asking whether someone with Plaintiff's age, education, work experience, and functional limitations would be able to find a job in the local or national economy. (Tr. 61-66) The VE responded that such a hypothetical person would be able to do the jobs of a sorter, an assembler, and a packager. (Tr. 69-70)

In response to questioning by Plaintiff's attorney, the VE testified that if Plaintiff would be off-task 25-30% if the work day, he would be unemployable. (Tr. 66-67) But in response to the ALJ's question, the VE testified that Plaintiff would be employable if he was off-task 9% of the work day. (Tr. 68)

### C. **Relevant Medical Evidence**

Plaintiff sustained injuries from a motor vehicle accident in April 2013, and was hospitalized for five days due to rib fractures, closed head injury, and trauma. (Tr. 246-380) Plaintiff experienced frequent, severe headaches. In follow-up treatment, Plaintiff reported doing well with improved speech, headaches, and memory issues. (Tr. 456-57)

In the Psychological Report completed on October 3, 2013, Dr. Michael Armour found Plaintiff's long-term memory was grossly intact, with his immediate memory mildly better than his delayed memory. Dr. Armour also found Plaintiff's speech was of normal rate, and his responses were relevant and coherent. Dr. Armour estimated that Plaintiff's intellect fell within at least the average range. Dr. Armour opined that Plaintiff's insight and judgment were adequate but Plaintiff and his family member reported anger management problems. Dr. Armour

found that Plaintiff was moderately impaired in his ability to understand and recall instructions, in maintaining concentration, persistence, and pace, and in social functioning and in adapting to his environment. Dr. Armour diagnosed Plaintiff with cognitive disorder, alcohol abuse in remission, and depressive disorder, and assessed a GAF score of 45. (Tr. 533-40)

Dr. Robert Cottone, Ph.D., a state agency medical consultant, found that Plaintiff could understand, remember, carry out, and persist at simple tasks; make simple work-related judgments; relate adequately to co-workers and supervisors; and adjust to ordinary changes in routine and settings. Dr. Cottone further opined that Plaintiff should avoid work requiring intense or extensive interpersonal interaction, handling complaints or dissatisfied customers, close proximity to co-workers, or close proximity to available controlled substances. (Tr. 81)

**D. ALJ's Decision**

In evaluating Plaintiff's physical and mental impairments, and whether Plaintiff was entitled to disability benefits, the ALJ followed the familiar five-step analysis found in the Commissioner's regulations. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the time of his alleged disability onset. (Tr. 23)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post left subdural hematoma, history of broken ribs secondary to a motor vehicle accident, history of disc replacement, alcohol abuse in remission, depressive disorder, and cognitive disorder. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 24, 27)

As part of his decision, the ALJ evaluated Plaintiff's credibility and also evaluated several pieces of medical opinion evidence. As to Plaintiff's credibility, the ALJ found Plaintiff

to be "not entirely credible," in his hearing testimony and assertions of disabling symptoms and functional limitations. (Tr. 30) This finding was largely based on the ALJ's view that the objective evidence did not support the level of disability that Plaintiff was claiming; Plaintiff's daily activities were limited as a lifestyle choice, not a medical condition; Plaintiff's routine and conservative medical treatment; and Plaintiff's failure to follow recommended treatment. (Tr. 30) Specifically, the ALJ noted that Plaintiff does not take medications for his headaches, and he has not returned to the neurologist for follow-up treatment as instructed.

As to the opinion evidence, the ALJ reviewed the opinions of the consultative examiner, Dr. Michael Armour, and the state agency medical consultant, Dr. Robert Cottone. (Tr. 28) Dr. Armour opined that his examination showed Plaintiff's long-term memory was grossly intact, with his immediate memory mildly better than his delayed memory. Dr. Armour noted that Plaintiff's mood was subdued, his speech was of normal rate, and his responses were relevant and coherent. Dr. Armour found that Plaintiff's intellect fell within at least the average range. Dr. Armour diagnosed Plaintiff with cognitive disorder, alcohol abuse in remission, and depressive disorder, and assessed a GAF score of 45. The ALJ gave Dr. Armour's opinion "some weight."

Dr. Cottone, who reviewed Plaintiff's medical records, opined that Plaintiff could understand, remember, carry out and persist at simple tasks, make simple work-related judgments, relate adequately to coworkers and supervisors, and adjust adequately to ordinary changes in work routine or settings. Dr. Cottone found that Plaintiff must avoid work involving intense or extensive interpersonal interaction, handling complaints or dissatisfied customers, close proximity to coworkers, and close proximity to available controlled substances. The ALJ gave this opinion "great weight." (Tr. 30)

After weighing the medical evidence, and evaluating Plaintiff's credibility and the opinion evidence of record, the ALJ formulated the follow residual functional capacity—

> [Plaintiff is capable of performing] sedentary work … except [he] can lift ten pounds frequently, sit 6 hours out of 8-hour day, and can stand and walk 2 hours out of 8-hour workday. Use of hand and arm controls is unlimited and use of foot and leg controls is reduced to occasional. Reaching overhead, feeling, fingering, handling, and reaching are all unlimited. [He] can never climb ladders, ropes, or scaffolds. [He] can occasionally climb ramps and stairs, as well as balance, stoop, kneel, crouch, crawl, and bend. [He] should avoid all pulmonary irritants, extreme temperatures, and hazards of unprotected heights, moving machinery, and industrial vibrations. [He] is able to operate a motor vehicle but it does not include operating a motor vehicle or being a passenger of public conveyance. [He] is able to do simple, routine, repetitive, unskilled task[s]. He can frequently interact with general public, supervisors and coworkers. [He] works better with things rather than people. He is able to make simple judgments. Time off task is 5% of a workday, with loss of productivity of 5%, with ability to respond to routine changes in the work setting on occasional basis.

(Tr. 25-26)

At step four, the ALJ found—based upon the testimony of the VE recounted earlier—that Plaintiff was not capable of returning to his past work because it exceeded the restrictions in his RFC. (Tr. 30) At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff is capable of making a transition to other work in the national economy. (Tr. 31) Specifically, the ALJ thought Plaintiff capable of working in jobs such as a sorter, an assembler, and a packager. (Id.) Because Plaintiff could make a transition to other work, the ALJ found him not disabled. (Tr. 32)

## II. **Standard of Review**

"To be eligible for [disability] benefits, [Plaintiff] must prove that [he] is disabled …" Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if [his] physical or mental impairments are of such severity that he is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423 (d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During the process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eight Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less

than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outsize that zone simply because this Court might have reached a different conclusion had it been the original finder of fact. See also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusion may be drawn from the evidence, and [the court] may have reached a different outcome.").

**III. Analysis of Issues Presented**[3]

As noted above, Plaintiff in this case makes two arguments for reversal of the ALJ's decision. The Court will address each of these points in turn. As discussed below, none of Plaintiff's arguments are meritorious. The ALJ's thorough opinion is supported by substantial evidence, and therefore, this Court must affirm.

**A. GAF Scores**

Plaintiff first argues that the ALJ committed reversible error when he failed to accord any weight to his low GAF scores inasmuch these scores show that he suffers from "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." (ECF No. 16-1)

Plaintiff overstates the importance of GAF scores. "GAF scores may be relevant to a determination of disability based on mental impairments … [b]ut an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." Mabry v. Colvin, 815 F.3d 386, 391 (8th Cir, 2016) (internal quotation and citations omitted). The Eighth Circuit Court of Appeals has concluded that GAF scores have "little value" and the

---

[3] Plaintiff does not challenge the ALJ's adverse credibility finding in his Brief. Moreover, the undersigned finds the ALJ complied with the strictures of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and there is substantial evidence in the record to support the ALJ's analysis of Plaintiff's credibility. A review of the ALJ's decision shows he partially discredited Plaintiff's subjective complaints for good reason and thoroughly discussed the conservative medical evidence and inconsistencies in the record, and Plaintiff's failure to follow recommended treatment and his limited activities of daily living as a lifestyle choice and not due to an established impairment, in support of his adverse credibility determination. See Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (explaining that "[c]redibility determinations are the province of the ALJ" and the deference owed to such determinations); Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination").

level of severity denoted by a GAF score does not correlate to the severity requirements under the Act. See Nowling v. Colvin, 813 F.3d 1110, 1115 n.3 (8th Cir. 2016) (citing Jones v. Astrue, 619 F.3d 963, 973-74 (8th Cir. 2010)) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security Income] disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings."). Accordingly, "[a] litany of scores in the 41-50 range, although indicating a serious problem with occupational functioning in the DSM-IV sense, does not necessitate a finding of disabling limitations under the Act." Doolittle v. Colvin, 2014 WL 7369635, at *2 (W.D. Mo. 2014).

Further, the current edition of the Diagnostic Statistical Manual of Mental Disorders abandoned the use of GAF scores "because of, among other reasons, 'it conceptual lack of clarity' and 'questionable psychometrics in routine practice.'" American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013)

Plaintiff's low GAF scores are thus not presumptively accorded dispositive, or even great, weight in the disability determination. As required to do so, the ALJ considered Plaintiff's GAF scores, much like any other type of evidence in formulating Plaintiff's RFC. See Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010). The ALJ explicitly considered and rejected Plaintiff's low GAF scores as mere "snapshots" of functioning as follows:

> The record also contains various GAF scores ranging from 45 to 50. The undersigned notes that the GAF score is of limited value. It is a subjective assessment of [Plaintiff's] current level of functioning utilizing a generic scale. Because it is an assessment of [Plaintiff's] functioning at a specific point in time and is highly dependent on [Plaintiff's] current situation, it provides no indication of [Plaintiff's overall level of functioning over an extended period. Also, because a GAF score is part of a mental health assessment, it is often determined during periods when the individual is having significant problems mentally, financially, socially, etc. Furthermore, because it is a subjective assessment and there are limited guidelines on how to assign a GAF score, if two people were to assess

> [Plaintiff] at the same time, it is highly likely that two different GAF scores would be assigned. The Social Security Act requires [Plaintiff] to demonstrate a medically determinable "severe" impairment or impairments that precludes engaging in substantial gainful activity for a period of at least twelve months (or leads to death). Therefore, when determining functioning, the undersigned must take a long-term approach. Everyone will experience difficult times in their lives and go through periods where their overall level of functioning is diminished. Individuals with severe physical and/or mental impairments are likely to have increased periods of diminished functioning and may be more likely to experience greater decreases in functional ability. However, it is still necessary to assess their level of functioning over a period of a year or more. Because the GAF score only reflects a specific moment in time and can change rather dramatically in a short period of time as [Plaintiff's] circumstances change, it is of very little value in determining disability.

(Tr. 29) (internal citations omitted).

Accordingly, the undersigned finds the ALJ did not err in failing to give great weight to Plaintiff's GAF scores, or that the GAF scores, in and of themselves, demonstrate that the ALJ's decision is not supported by substantial evidence in the record as a whole.

### B. ALJ's RFC Determination

Plaintiff contends that the ALJ failed to account for his serious psychological impairments in his RFC determination.

A disability claimant's RFC is the most he can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 249 F.3d 1019, 1024 (8th Cir. 2002) (internal quotation omitted).

"Some medical evidence is necessary to support the ALJ's determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (internal quotations omitted). While more weight is generally given to the opinion of an examining

source than to the opinion of a non-examining source, the ALJ must consider state agency medical consultants' findings as opinion evidence. See 20 C.F.R. §§ 404.1527(d)(1); 404.1527(f)(2)(I). In a case where no examining source has opined as to Plaintiff's abilities to perform work-related activities, it is within the ALJ's authority to rely on the RFC provided by a non-examining source. See Meares v. Barnhart, 2003 WL 22283913, at * 11 (E.D. Mo. Aug, 29, 2003) and Melton v. Barnhart, 2003 WL 21976088, at *4 (S.D. Iowa Aug. 4, 2003) (indicating that findings of fact and opinions made by non-examining agency physicians must be treated as "expert opinion evidence of non-examining sources," and evaluated in conjunction with other medical evidence of record).

The record shows that, at the time the ALJ issued his decision, none of Plaintiff's treating physicians had opined as to Plaintiff's mental ability to do work-related activities. Therefore, it was within the ALJ's authority to rely on the RFC provided by Dr. Robert Cottone, the state agency medical consultant, and the ALJ's determination that Plaintiff had the RFC to perform sedentary, unskilled work consisting of simple, routine, repetitive, unskilled tasks and making simple judgments. The ALJ also found that Plaintiff can frequently interact with the general public, supervisors, and coworkers but he works better with things rather than people. The ALJ found that Plaintiff would be off task 5% of the work day resulting in a 5% loss of productivity, with the ability to respond to routine changes in the work setting on an occasional basis.

Plaintiff's argument that the RFC should have included additional limitations related to his serious psychological impairments is not supported by the medical records. Although Plaintiff testified that he had serious psychological impairments, the ALJ found his testimony not entirely credible in light of the subjective medical evidence. The only additional limitation Plaintiff identified that should have been included to address his serious psychological

impairments was the need to be off-task 25-30% of the work day. The medical records are devoid of any findings that Plaintiff would be off-task 25-30% of the work day. The undersigned concludes that substantial evidence supports the ALJ's determination that no further limitations were required.

As discussed above, the undersigned finds that the ALJ's mental RFC finding is supported by substantial evidence in the record; thus, the ALJ properly relied on the vocational expert's response to a hypothetical question that included the RFC finding. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005) (concluding the ALJ "properly included only those limitations supported by the record as a whole in the hypothetical" and stating "[a] vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence") (quotations omitted).

As previously discussed, the ALJ properly found that Plaintiff's allegations of disabling limitations were not credible based on Plaintiff's failure to follow recommended treatment and his limited activities of daily living as a lifestyle choice and not due to an established impairment. After discussing the medical opinion evidence, the ALJ concluded that his RFC assessment was supported by the medical evidence of record considered as a whole, and the opinion of the state agency doctor. The undersigned finds that the RFC formulated by the ALJ is supported by substantial evidence in the record as a whole.

## IV.     Conclusion

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. The ALJ thoroughly evaluated the evidence in this case, and gave Plaintiff a full and fair hearing. An ALJ's decision is not to be disturbed "'so long as the ... decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply

because [the Court] might have reached a different conclusions had [the Court] been the initial finder of fact.'" Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quoting Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008)).  Although Plaintiff articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above. Accordingly, the undersigned finds that the decision of the ALJ denying Plaintiff's claims for benefits should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in this matter is affirmed, and Plaintiff's Complaint is dismissed with prejudice.

A separate judgment is entered this day.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of June, 2017